GREGORIO PÉREZ RODRÍGUEZ, ETC., ET AL., Plaintiffs and Appellants, *v.* JOSÉ SAURÍ AMADEO ET AL., Defendants and Appellees.

No. 12522. Decided February 13, 1962.

*Inés Acevedo Campos* and *R. Muñoz Ramos* for appellants. *Rivera Zayas, Rivera Cestero & Rúa* for appellees.  *Enrique Báez García* for U. S. Fidelity & Guaranty Co.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo and Mr. Justice Rigau.

PER CURIAM.

After holding a trial on the merits, the trial court dismissed the complaint filed by Gregorio ·Pérez Rodríguez, per se and in representation of his son Francisco Pérez, a minor, against José Saurí Amadeo, Carmen Ana Amadeo widow of Saurí, Carmen Rita Saurí, and the U. S. Fidelity Guarantee Co., the latter as insurer of the defendants Saurí Amadeo.  The complaint claimed damages suffered by the plaintiffs as a result of the wounds received by the minor Francisco Pérez, when an employee of defendant Carmen Ana Amadeo widow of Saurí, fired a shotgun, in the farm of his employer.[1]

There is practically no dispute as to that (a) the defendant Carmen Amadeo widow of Saurí was the owner of the farm named Constancia, having 1,000 cuerdas and located in Playa de Ponce, and that at the time of the events and for four or five years, Feliciano Pérez had been employed by Ana Amadeo as a watchman of said farm; (b) on February 19, 1953, Feliciano Pérez fired a shotgun several times

---

[1] As a result of these wounds the minor lost his left eye.

towards a group of persons, the majority of whom were minors, and that one of those shots wounded the minor plaintiff; (c) that consequently, the minor and his father suffered damages; (d) that in a shedhouse near the intersection of Colón and Valdivieso Streets, a gun was kept for the use of the watchmen, among them Feliciano, so as to protect the farm from vicious animals.

The trial court concluded, fully supported by the evidence, that Feliciano Pérez worked 8 hours daily, from 7 a.m. to 11 a.m. and from 1 p.m. to 5 p.m.; that on February 19, 1953, the day of the accident, Feliciano worked on that schedule and at 5 p.m. stopped working and was substituted by other watchmen or guardians, among them, one named Elías Quiñones. The court also concluded:

"(b) On that day, February 19, about noon, Feliciano had had a personal quarrel with a youth, already a strong man, in which the former had grabbed him by the neck and the latter had hit him on the head with a stone. Feliciano reported or went to report that youth. After doing his work he left the place. According to his testimony he went to his house, located within the same farm Constancia, then to town, and at night he came to the place of the events. His reasons for returning there do not appear from the evidence, but he actually went there and began to talk with Quiñones, the employee who substituted him. Perhaps because of the events of that day, or for any other reason, there existed a state of hostility since early in the night on the part of a group of persons, mostly boys, who were throwing stones and insulting the watchman. When Feliciano arrived the insults grew louder against him and more stones were thrown. He went into the farm and taking the gun from the shedhouse where he kept it, fired it, wounding the minor plaintiff. Although the evidence disagrees substantially on this particular, it can be stated with relative certainty that he at least fired the gun twice, the first shot apparently caused no harm to anyone, but the second wounded the plaintiff. This shot was fired from the farm towards the public road, where many persons and boys who were assembled near the place left running or fleeing.

"(6) For the purposes of the liability of defendant Amadeo widow of Saurí, the only person sentenced in this suit, since Feliciano Pérez has not been personally sued, the court concludes, as a matter of fact, that Feliciano upon making use of the gun and firing the same hurting the plaintiff, was not acting in defense of his employer's or principal's interest nor for her benefit. Even considering the evidence with every intendment in favor of the plaintiff, the same does not convince us that Feliciano fired in defense of his employer's property itself, nor in the latter's interest against destruction, theft, or any other wrongful intervention by a third person. Rather, the evidence established that Feliciano fired the shot, justifiably or not, either in legitimate defense or in excess of it, while he defended himself, that is, his person, from attacks made upon him. Because of the nature of the property, a rural property, with cut sugar cane on the ground, it could not be concluded that the throwing of stones of more or less average size, within said farm, by several boys was going to harm or destroy the property itself, as would have been in case of theft, fire, or another type of destruction." (Judgment Roll, 13, 14.)

And upon making its conclusions of law, said court stated:

"But if to the circumstance that this employee had already finished his day's work many hours before the events took place and that his job did not require or compel his presence there at that time, we add the fundamental fact, as we found from the evidence, that he did not use the weapon for the protection of his employer's interest, or for the latter's benefit, but rather in defense, whether justified or not, of his person, we must conclude, as a matter of law, that the employer in this case is not responsible for the damages caused by the employee. We should not be understood as saying that the fact that a watchman or guardian acts in self-defense automatically relieves the employer of responsibility. Precisely, if the watchman defends his person against attack as a means to implement the performance of his duty instead of fleeing and thus leaving his employer's interest without its due protection, the case would clearly be one of responsibility on the part of the employer, all other necessary elements being present. However, the evidence tended to show that it was not Feliciano who was supposed to watch over and protect the interest of the employer at the time and place where

the events occurred, and it showed that at that time and place no incident occurred which tended to destroy or injure the employer's interest. So much so that the watchman in charge did not make use of the weapon nor intervened in any other way.

"We believe that the conclusions to which we have arrived are buttressed by the following authorities: *Rodríguez* v. *People*, 75 P.R.R. 377 [385–386]; *Vigio* v. *Cartagena*, 71 P.R.R. 665; *Maysonet* v. *Heirs of Arcelay*, 70 P.R.R. 155; *González* v. *Compañía Agrícola*, 76 P.R.R. 373; *Suárez* v. *Saavedra*, 52 P.R.R. 662; *Suárez* v. *Saavedra*, 61 *D.P.R.* 605;* *Rivera* v. *Maldonado*, 72 P.R.R. 448; *Lloréns* v. *Lozada*, 73 P.R.R. 260.

"Of these decisions some have upheld the liability of the employer, while others have denied it, but in all of them the principle is clear that even in those cases where the employee exceeds himself or commits errors of judgment, or acts arbitrarily or criminally, or against the instructions of his employer, even though the employer's liability may exist, there must be something in his action which, either expressly or implicitly, results in favor of the employer's interest and in his benefit. This something is the logical nexus, of necessary occasion, between the employment and the wrongful act discussed in *Rodríguez* v. *People* and in *González* v. *Compañía Agrícola, supra*." (Judgment Roll, 16–18.)

■■ It does not appear from the record that the aforementioned findings are erroneous. The evidence submitted by the plaintiffs to establish the fact that at the moment of the shooting Feliciano was acting within the scope of his employment as watchman or guardian of the farm or in protection of his employer's interest or for its benefit, did not convince the trial court once the conflict was settled by parole testimony, and its conclusion to the contrary is not clearly erroneous, nor does it fail to be supported by substantial evidence. For the purposes of establishing this fact, so very essential in this suit, the appellants greatly emphasize the testimony of the police sergeant, Juan Piña Agosto. He was the one who took Feliciano to police headquarters.

---

* Correct citation 60 P.R.R. 589.

He stated that he knew Feliciano worked in the farm where the shooting took place; that for many years he has seen him in the sugar cane field, day and night, sometimes on horseback and sometimes on foot; that for many years he had seen him day and night at police headquarters filing complaints; that on other occasions, before the events occurred, he had seen Feliciano at nights in the cane field, sometimes on horseback, sometimes on foot, walking around the place; that on the day of the events he saw him in the morning, in the afternoon, and in the evening at headquarters, but that on that evening he did not see him in the cane field, and that at nights he used to see him there, specially during the grinding season, and that Feliciano lived in the Saurí farm.

The fact that Feliciano was seen on other occasions walking in the farm during nighttime, or that he brought complaints to police headquarters could give occasion to infer that on those occasions Feliciano was acting within the scope of his employment but it does not affirmatively establish the fact that on the night of the accident he was working for his employer, nor that upon firing the shots he was acting in defense of its interest. And this is more reasonable so if we consider that there is evidence in the record, believed by the trial judge, to the effect that on the day of the shooting Feliciano stopped working at five o'clock in the afternoon and was substituted by another employee. Furthermore, there is explanatory evidence of Feliciano's presence in the farm during that night, as well as of the origin of the whole incident which culminated in the shooting, evidence which turns out to be incompatible with the theory of plaintiffs-appellants as to the duty that said employee was discharging then and there.

Several isolated links in plaintiffs' evidence, such as the answer which Feliciano gave to Ricardo, namely: "That is what I am here for; I am going to kill those scoundrels," or those other expressions which according to a witness were

voiced by Feliciano: "They are stealing the sugar cane," "that is what I am here for, to protect this sugar cane because this bunch of thieves are stealing the cane," were not given credit by the trial judge, and considering the serious conflict which existed in the evidence, and the presence of other facts and circumstances which rendered such evidence doubtful, nothing compelled the person who appraised and weighed it to arrive at the final conclusion that on that evening Feliciano acted within the scope of his employment and in defense of his employer's interests.

On the other hand, the facts considered and established in this case do not justify that we consider the possibility of imposing liability on the defendant under the dangerous instrument doctrine. See 2 Harper and James, The Law of Torts § 26.10, at 1393.

For the foregoing reasons, the judgment rendered by the Superior Court, Ponce Part, on September 12, 1956, shall be affirmed.